## In Matter Estate of Mary Alice McCalmont, Deceased. Karl Yost, Executor, Petitioner-Appellee, v. Taylor Fitzgerald, Objector-Appellant.

### Gen. No. 11,101.

Second District, Second Division.

February 11, 1958.

Released for publication February 28, 1958.

Dixon, Devine & Ray, of Dixon, and Anderson, Will & O'Donnell, of Mansfield, Ohio (George K. Ray, Sherwood Dixon, and Luke R. Morin, of counsel) for objector-appellant.

Besse & Besse, of Sterling (Robert W. Besse, of counsel) for appellee.

PRESIDING JUSTICE CROW delivered the opinion of the court.

The objector-appellant, Taylor Fitzgerald, a nephew of the decedent, is the residuary legatee and devisee and principal beneficiary under the will of Mary A. McCalmont, deceased, and is a resident of Ohio. Karl Yost, a resident of Illinois, as executor, on a petition to fix his fee, was allowed an executor's fee of $7,000 by the County Court of Whiteside county, Illinois, and on an appeal an order to the same effect was entered by the Circuit Court of Whiteside county. The appellant, who objects to the allowance of the fee, bases his objection upon the theory that the deceased was not a domiciliary of Illinois at the time of her death, but of

Ohio; therefore, the situs of her intangible personal property, to the extent of $122,336.72 of stocks, bonds, and a note, was not in Illinois, but in Ohio; that the principal administration, even if Illinois were her domicile, was in Ohio, not Illinois, and Mr. Yost, the Illinois executor, performed no services as to the $122,336.72 of property in Ohio; that he was derelict; and that, under the circumstances, the executor's fee in Illinois should not exceed $2,625.

The County Court in a previous Illinois Inheritance Tax proceeding on an amended tax return found the total assets of the estate were $150,606.13, consisting of $14,050 of Illinois real estate, and $136,556.13 of personalty, and found, further, that the domicile of the decedent was in Illinois and the situs of all the personal property was Illinois, and assessed a tax of $8,821.43.

Mrs. McCalmont, a widow, died August 28, 1954, at Shelby, Ohio, at the residence of Taylor Fitzgerald, the appellant. In her will he was named co-executor with Mr. Yost, a Morrison, Illinois attorney, the petitioner appellee, Mr. Yost being a practicing attorney for about 22 years, and a neighbor of the decedent. The Probate Court of Richland county, Ohio, admitted her will to probate on September 14, 1954, finding her domicile to be in Ohio. Mr. Fitzgerald was appointed Executor in Ohio, Yost having declined to act there. Fitzgerald employed an Ohio attorney to represent him there. Subsequently, on November 15, 1954, Yost was appointed executor in an ancillary proceeding by the County Court of Whiteside county, Illinois, an authenticated copy of the will and a transcript of the Ohio proceedings being filed there.

Yost on March 23, 1955 filed an Illinois Inheritance Tax Return showing total assets in Illinois of $28,-269.41, consisting of realty in the amount of $14,050, cash $7,686.01, household goods of $1,097.90, and stock

250

certificates of $5,435.50, and he listed as a deduction or claimed a fee of $2,625 as executor, there being no tax indicated as due. The Attorney General of Illinois, however, questioned the domicile of the decedent, and later, after submission by Mr. Yost of some affidavits prepared by or under the supervision of Mr. Fitzgerald, the Attorney General determined the domicile was Illinois and asked that an amended return be prepared. Karl Yost, the Illinois executor, acquiesced in that and prepared an amended Illinois Inheritance Tax Return on that basis, showing a total of all assets in Illinois of $150,606.13, at the time of death, and he then listed as a deduction or claimed $10,663.20 as an executor's fee, showing an $8,821.43 tax due. He made no deduction therein for, and asserts no claim here for attorney's fees, and he employed no separate attorney in Illinois. The amended tax return listed no deduction for Federal estate tax, or attorneys' fees in Ohio, or Ohio inheritance tax, if there were any, relating to some of the same property. And the amended tax return included and listed as subject to tax certain tangible personal property, jewelry, which Mr. Yost said was physically situated in Ohio, not Illinois, while he was executor.

The requested executor's fee of $10,663.20 was reduced in the present proceeding to $7,000 on a hearing before the County Court on the present petition, there being an answer and objection by the present appellant. The chief objection was to the effect that the principal administration was in Ohio and only ancillary administration was had in Illinois. Yost made proof of the reasonableness of the executor's fee claimed. This consisted of the testimony of certain attorneys, namely, Mason Bull, of Morrison, and John Riordan, of Morrison. Attorneys Henry C. Warner, of Dixon and William H. Keho, of Amboy, testified for the objector-appellant. The testimony of all the attor-

251

neys indicated they based their opinions upon the amount of work done, as testified by Karl Yost, and the size of the estate. Although there were some variations in that testimony there is a sufficient and reasonable basis therein and in the other facts and circumstances in evidence for the conclusion reached in the order here involved as to what was a reasonable compensation. Disregarding the legal question and controversy as to whether the $122,336.72 part of the intangible personal property ought to be given any consideration for this purpose, the percentage relationship of the fee allowed to the total estate is within the relative percentages testified to by the objector-appellant's witnesses, so far as that particular factor is of significance in fixing an executor's fee. Such is, of course, one but only one of several factors to be considered on that question.

The will was dated March 2, 1954, less than six months before the testator's decease, was written in Ohio, and apparently attested in Ohio. The decedent stated in her will that she was of the city of Morrison, Illinois; in one of the clauses thereof making a gift of the balance of her personal effects, etc., she identified them as being "located in my residence on North Genessee Street, Morrison, Illinois"; and she nominated Karl Yost of that city as one of her executors. Mr. Yost did not prepare the will. The present Ohio attorney for the present objector-appellant prepared it. It appears from the evidence that she had been staying in Ohio for several months prior to the date of the will and up to the time of her death. She maintained her residence, that is her house, in Morrison, Illinois, however, where she had her furniture, and where she had lived for many years. She employed a caretaker to look after her home. She was buried at Morrison. She had her bank safety deposit box in the Smith Trust and Savings Bank, at Morrison, Illinois,

and she had a bank account in that bank of $7,000. She apparently also had all of her stocks, bonds, and a note in that safety deposit box in Illinois until they were apparently removed by Taylor Fitzgerald, the present appellant, purporting to act under a power of attorney from the decedent, on August 28, 1954, at 9:05 a. m., about 15 minutes before (if it was before and not after) Mrs. McCalmont died the same date in Ohio at 10:00 a. m. eastern standard time. Those securities, at least, were apparently there October 22, 1953, the last date the decedent entered the box; they were not there November 28, 1955 when Mr. Yost entered it; Mr. Fitzgerald did not call on Mr. Yost on August 28, 1954, the date Mr. Fitzgerald was at the box; and he had not told Mr. Yost it was empty. Mr. Fitzgerald did not testify herein, nor did his Ohio attorney testify on his behalf.

There was no objection by the present objector-appellant to the finding by the County Court in the Illinois Inheritance Tax proceeding on the amended tax return to the effect that the domicile of the deceased was in Illinois and that the situs, therefore, of all the intangible personal property was in Illinois. The objector-appellant had notice and knowledge of the Illinois Inheritance Tax proceedings. He and his Ohio attorney cooperated with the Illinois executor to some extent in preparing that amended return by sending some necessary information as to some deductions. He did express, however, to the Illinois executor a protest as to the claimed executor's fee. He did not in the present proceedings on the executor's petition for fees seek to present any evidence to the effect that Illinois was not the domicile and Ohio was. In fact, the appellant apparently agrees that Illinois was the domicile and that Illinois was the situs of all the intangible personal property.

■ We agree with the Trial Court's finding that, it having been decided by the County Court that Mrs. McCalmont was domiciled in Illinois at the time of her death, it necessarily follows that the administration of her estate in Whiteside county, Illinois is not ancillary in fact, although it was begun as an ancillary administration. It follows, as a matter of law, that Mr. Yost, the executor in Illinois, is apparently legally responsible for all intangible personal property in the estate, and apparently has the legal responsibility of accounting in some manner pursuant to law for all the assets in the estate,—how he is to do so, and the details thereof, are matters not now before us. The Ohio Executor, the present objector-appellant, notwithstanding that finding of the Illinois Court, had apparently since August 28, 1954 and has continued to have in his physical possession certain of the intangible personal property consisting of certain stocks, bonds, and a note, of the value of $122,336.72, and as to those Mr. Yost, the Illinois executor, evidently did not have physical possession and performed no services in respect thereto except taking them into account, obtaining values therefor, listing them in the amended Illinois inheritance tax return, preparing the order thereon, paying the Illinois inheritance tax relative thereto, and collecting the note. No questions were presented so far in the probate proceedings in the County Court concerning the property inventoried, or the intangible personal property physically held by the appellant, the Ohio Executor, or concerning proper distribution thereof, or accounting therefor, or the circumstances of the physical possession of that property by the appellant, or what the detailed responsibilities may be of the Ohio executor in the premises, or concerning payment of costs of administration, taxes, debts, and legacies, and such are not involved here.

254

In The People v. Union Trust Co. (1912) 255 Ill. 168, in speaking of the Illinois inheritance tax relative to a decedent domiciled in Illinois who had some intangible personal property, stocks and bonds of non-Illinois corporations and a bank account, in California, the Court said:

"We believe the authorities are a unit in holding that personal property within the jurisdiction of a foreign State may be made subject to a succession or inheritance tax in the place of the decedent's or testator's domicile. . . ."

The situs of intangible personal property, a promissory note (or stocks or bonds, for example) is the domicile of the decedent: People v. Forman (1926) 322 Ill. 223, even though the note be physically located elsewhere at the time of the decease. There is no constitutional objection to a law which lays an inheritance or succession tax according both to the principle of the domicile of the decedent and according to the principle of the situs of the property, although this may at times result in double taxation: People v. Union Trust Co., supra. The administration granted in the State of a decedent's domicile at the time of his death is the principal administration and that granted in another State is but ancillary: Young v. Wittenmyre (1888) 123 Ill. 303. The County Court was entitled to determine the decedent's domicile here to be Illinois, independent of what the Ohio Court may have determined. A domicile once established being presumed to continue, the burden of proof being on one who claims there has been a change, it being necessary to a change of domicile that there be an intention to change and that the change actually be made by abandoning the old and permanently locating in a new domicile, there can be no real doubt here but that Illinois continued to her decease to be the decedent's

255

domicile: People v. Estate of Robert Moir (1904) 207 Ill. 180.

The appellant regards domicile of the decedent, however, as unimportant in the determination of this executor's fee and argues that regardless of Illinois being the domicile and regardless of Illinois being the situs of the intangible personal property for tax purposes, the intangible personal property to the extent of $122,336.72 is nevertheless the subject of administration only in the State of Ohio, and, therefore, cannot be given any consideration in determining the reasonableness of the executor's fee of the appellee. With this view we cannot agree. The County Court, and the Circuit Court, properly took into consideration the domicile of the decedent and the Illinois executor's legal responsibilities, and the evidence as to the reasonableness of the fee, and both of the usual factors, namely, the work done by the executor and the size of the estate, were given consideration.

 Under Ch. 3, Ill. Rev. Stats., 1955, Par. 490, an executor shall be allowed reasonable compensation for his services. The compensation of an administrator, or an executor, and his attorney are matters peculiarly within the province of the Probate Judge; and when that Judge in view of all the circumstances has exercised his judgment, and determined what he considers to be a proper compensation for the personal representative, it would require a plain case of wrongful exercise of judgment to permit another court to alter the allowance: Griswold v. Smith (1925) 214 Ill. 323; Askew v. Hudgens (1881) 99 Ill. 468; In the Matter of Estate of Sarah Kanner, deceased (1954) 2 Ill.App.2d 530. The reasonableness thereof depends on the circumstances in each case: In re Estate of Harry Edwards (1942) 312 Ill. App. 645. In In re Estate of James, deceased (1956) 10 Ill.App.2d 232, in referring to attorney's fees for the attorney for an

executor etc. under the immediately following and similarly worded paragraph of the Probate Act, the Court said:

". . . Each case must rest on its own facts and circumstances and no hard and fast rule can be or has been laid down in determining what would be a reasonable attorney fee in each individual case. In this case, the trial court, after hearing the witnesses, examining the record, and being fully advised, fixed and determined what it considered to be a reasonable attorney's fee for services rendered by the attorney for the estate. This court cannot say that the determination of the trial court is manifestly or palpably erroneous and finds nothing that would justify it in overruling the judgment of the Circuit Court. . . ."

And in matters of executor's etc. and attorney's fees in such estates the court is not necessarily bound by opinion testimony as to the amount to be allowed; it need not accept as conclusive, but should give due regard to the opinions of witnesses; it may and should take into consideration its own knowledge of and judgment as to the value of the services: In re Estate of James, deceased, supra.

■■■ In the instant case, Karl Yost, the Illinois executor, claimed fees as such executor, with no additional claim for an attorney's fee, although, as is usually the case, much of the work he did was that of an attorney for the executor. The services he rendered were many and varied, relating to a number of different subjects, which need not be set out in detail here, consisting of such matters as the petition for probate of will etc., the declination of Mr. Fitzgerald, the co-executor, several waivers of notice on that petition, the order admitting the will to probate, the executor's bond, executor's oath, letters testamentary, appraisement bill, inventory, disposition of a number of claims, notice of claim date, proof of and order finding

heirship, special bond for sale of real estate, the original inheritance tax return, the amended return, the order assessing that tax, applications for inheritance tax consents, numerous conferences with Mr. Fitzgerald, cleaning up the residence, obtaining certain stocks, collecting a note, conferences with legatees, disposing of tangible personal property, leasing real estate, selling some real estate, inventorying the safety deposit box, correspondence and phone calls with Mr. Fitzgerald and his Ohio attorney, conferences with the Attorney General's office, obtaining values on securities, settling some real estate taxes, correspondence with other people, sale of some stock, care and maintenance of real estate, etc. Such required many hours of time, probably as much as 250 to 300 hours according to the executor's estimate, supported in major part, but not entirely, by his records. There is no duty, however, on an executor necessarily to itemize his requested fees, and show the hours spent in each activity, In re Estate of Harry Edwards, deceased, supra, although, of course, the circumstances in that respect and the presence or absence of such records may be appropriate elements for consideration along with all the other necessary factors.

 We believe the trial court properly took into consideration the testimony of the four attorneys, the size of the estate, the work done, the time required, and the decedent's domicile, in fixing the executor's fee. The fact that some of the intangible personal property was evidently not in the physical possession of the Illinois executor (though evidently in his legal possession), and the facts that in some respects, such as the preparation of the Federal Estate Tax Return, income tax returns, payment of legacies, transfer of some of the securities, etc., the Illinois executor did not perform all the services he might have ordinarily done under other circumstances, appear to have been

given appropriate consideration by the Courts below. The executor was allowed $7,000, substantially less, $3,663.20 or about 34 per cent less, of that he requested ($10,663.20), which request had taken into account all the intangible personal property, and which request of $10,663.20 the Attorney General, at least, had considered reasonable as a deduction for inheritance tax purposes on the amended inheritance tax return. Moreover, we understand the fee allowed to be in full through the closing of the Illinois administration, which was not apparently closed at the time of the allowance, so whatever normal steps the Illinois executor may need to take to close the estate in an orthodox manner he would be expected to do so and the present allowance covers the entire subject,—it is for his total services as executor. We cannot say the determination on this petition by the County and Circuit Courts is manifestly or palpably erroneous.

In In re Estate of Harry Edwards, deceased, supra, the gross estate was about $250,000—something more than is involved here,—and the executor, who was also an attorney, as here, did perform more services than the executor here,—but an allowance of $12,000 for the executor's fee by the County Court and Circuit Court was affirmed by this Court,—at a time, 1942, when the dollar had a greater value than it does today,—a circumstance to which appropriate consideration may be given: In re Estate of James, deceased, supra. In Elden v. Whittemore (1893) 51 Ill. App. 662, in an estate of about $300,000,—about twice what is involved here,—in which the condition thereof may have been such that its settlement did not require too much difficulty or labor by the administrator,—an allowance of an administrator's fee of 6 per cent,—presumably about $18,000,—the maximum under the then statute,—by the County Court and Circuit Court was affirmed,—again at a time, 1893, when the dollar had

259

a greater value than it does today,—and the Court commented that it would require as plain a case of a wrongful exercise of judgment by the lower Courts to decrease an allowance as to increase it, and that was not a plain case. Nor do we believe the present case a plain case requiring a decrease in the allowance made.

██ The appellant's charges of dereliction of duty on the part of the Illinois executor do not appear to be supported. An executor, of course, as the appellant says, is a fiduciary, and owes a duty of good faith toward the estate and those interested, and is not to be allowed compensation for neglect or dereliction of duty: Edwards v. Lane (1928) 331 Ill. 442; Nonnast v. Northern Trust Co. (1940) 374 Ill. 248. But the appellant does not make clear the particular application of those principles here. Mr. Yost, of course, did not have to accept the Attorney General's administrative determination that the decedent's domicile was Illinois and to proceed with an amended inheritance tax return on that basis. The County Court, in last analysis, makes a judicial determination in such matters. But, he seems to have acted in good faith. He presented to the Attorney General for consideration whatever affidavits Mr. Fitzgerald and the Ohio attorney forwarded him, and informed that office of the physical location of the securities. They, Mr. Fitzgerald and the Ohio attorney, were familiar with the Illinois Attorney General's position, are presumed to have known such was not conclusive or determinative, and they did not at the time request or insist upon the prosecution of contested litigation in the County Court in that respect and did not supply Mr. Yost with any other information or facts than as reflected in the affidavits. Mr. Yost had no duty to personally vouch for the accuracy of the affidavits, and, indeed could not do so. By filing an amended tax return, in accordance with the request of the Attorney General as to domicile,

260

we think it can hardly be concluded that he engaged in a secret, furtive campaign of suspicion and accusation to do everything in his power to convince the Attorney General that the domicile was Illinois. Nor is there anything to indicate that a different type of presentation would have likely produced a different result with either the Attorney General or County Court. To the contrary, whatever evidence there is in this record on the subject indicates, as we've said, there can be no real doubt but that Illinois was the decedent's domicile. And, strangely, even at the hearing on the present petition the objector made no effort to present any evidence to the contrary. The provisions of Ch. 120, Ill. Rev. Stats., 1955, par. 399a, to which the appellant refers,—"Where the Attorney General claims that a decedent was domiciled in this State . . . and the taxing authorities of another State . . . make a similar claim with respect to their State . . . etc." appear to have no application because, at the outset, there is no evidence here that the taxing authorities of Ohio made a claim that this decedent was domiciled in Ohio.

 A deduction could not at the time be listed in the amended return for the Federal estate tax because the preparation of the Federal estate tax return was evidently up to Mr. Fitzgerald and the Ohio attorney and they had not yet done it. The attorney's fees in Ohio, we shall assume, might have been a proper deduction, but, though Mr. Yost requested the information, it was not forthcoming to him. The Ohio inheritance tax, even if there were any, would not have been a proper deduction: People v. Ballans (1920) 294 Ill. 551. If the tangible personal property, jewelry, which Mr. Yost said was situated in Ohio was, in fact, so located and had a situs there at the decedent's death (and this record is not too clear as to that), it was not subject to consideration so far as the Illinois inherit-

ance tax is concerned and need not have been listed in the amended return, Frick v. Commonwealth of Pennsylvania (1924) 268 U. S. 473, 69 L. Ed. 1058, but the taxes due to that were evidently so small as to be de minimis and the harm to the estate negligible, if any. Lex non curat de minimus.

Mr. Yost could have delayed filing an amended Illinois inheritance tax return for awhile, but he had no duty to delay and can hardly be said to have been derelict for being somewhat more expeditious perhaps than was strictly necessary. Mr. Fitzgerald had notice as to the inheritance tax proceedings on the amended return, knew what was or would be in the return, filed no objection, and evidently acquiesced therein, taking no steps effectively to follow through at the time with his informal protests to Mr. Yost concerning his listed fee.

█ █ The appellant rather generally says the Illinois executor paid the inheritance tax out of the assets in his possession, though it was levied upon assets located in Ohio, contrary to law. The inheritance tax is a tax on the right of succession to the beneficial interest in property, is not a tax on the property as such or on the estate, is ordinarily to be paid out of the particular property or interest therein which the legatee or devisee receives, and the personal representative ordinarily can only retain from a legacy etc. the inheritance tax due on that legacy etc.: People v. Union Trust Co., supra; In re Estate of Greiner (1952) 412 Ill. 591; In re Estate of Johnson (1945) 389 Ill. 425. The substantive question of whether the Illinois executor legally made the $8,821.43 payment of Illinois inheritance tax out of whatever funds he may have had, from whatever sources, and exactly how the accounting is to be in that respect, and the details of that tax matter are really not strictly before us on the present petition for an executor's fee. But it may be

observed that, whatever the rule in some of these respects may be in the absence of a provision in the will, the decedent's will here directed the executors to pay all inheritance taxes, they to be treated as expenses and costs of administration. Under the circumstances, so far as material to the present petition, and for the present purpose, we cannot perceive a dereliction of duty in that respect by the Illinois executor.

We find no reversible error, under the circumstances, and the order will be affirmed.

Affirmed.

SOLFISBURG and WRIGHT, JJ., concur.